IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA INVESTMENT PROPERTIES, II LP<br><br>Plaintiff,<br><br>v.<br><br>TRUIST BANK in its own right and as successor to BRANCH BANKING AND TRUST COMPANY (BB&T),<br><br>Defendant. | No. 4:22-CV-00555<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**DECEMBER 1, 2022**

Plaintiff Pennsylvania Investment Properties, II LP ("PIP II") sues Truist Bank, the former owner of 2541 E. College Avenue, State College, Pennsylvania. Truist succeeded Branch Banking and Trust Company ("BB&T") as the owner of 2541 E. College Avenue after a merger. Before the merger, PIP II and BB&T entered into an agreement that now binds Truist, BB&T's successor in ownership of the property. That agreement required Truist to give PIP II notice of its intention to sell the property, wait thirty days before entering into any binding arrangement to sell the property, and negotiate in good faith with PIP II to potentially sell the property to PIP II on mutually acceptable terms.

Without notifying PIP II, Truist sold the property to a third party. PIP II alleges that in doing so, Truist breached its agreement with PIP II. Truist now moves

to dismiss PIP II's Complaint. For the following reasons, Truist's motion will be denied.

## I. BACKGROUND

### A. Factual Background

In July 2016, PIP II purchased a property at 2501 E. College Avenue, State College, Pennsylvania.[1] The purchase agreement for that property provided that the parties would execute a separate agreement regarding 2541 E. College Avenue, the immediately adjacent property.[2] As contemplated, PIP II and BB&T executed the Right of First Offer Agreement ("ROFO Agreement") in December 2016 with respect to 2541 E. College Avenue.[3] The ROFO Agreement provided:

> 1. If BB&T desires to sell its interest in the [2541 E. College Avenue] (the "Interest") at any time, prior to marketing or accepting any offer to purchase the Interest, BB&T shall give

---

[1] Compl., Doc. 1 ¶ 34.
[2] The relevant language provided that:

> [BB&T] shall further grant to [PIP II] a right of first offer on [2541 E. College Avenue] (the "Right of First Offer"), to be set forth in more detail in an agreement to be negotiated and agreed upon by the parties during the Study Period, and by which [BB&T] shall agree that in the event the [BB&T] decides and for a period of thirty (30) days after such written notice is delivered, [BB&T] shall not enter into a binding agreement with any third party for the purchase of the [2541 E. College Avenue], and shall negotiate in good faith with [PIP II] to agree upon mutually acceptable terms for a purchase contract between [PIP II] and [BB&T] for the purchase of the [2541 E. College Avenue]. . . . If no purchase agreement for the [2541 E. College Avenue] has been executed between the [PIP II] and [BB&T] by the end of the thirty (30) day period, then the Right of First Offer shall be deemed terminated and of no further effect. The agreement shall expressly state that the Right of First Offer is not recurring after the expiration of the one 30-day period.

*Id.* ¶ 37; 2501 E. College Ave. Purchase Agreement, Doc. 1-1 ¶ 33(b).
[3] Compl., Doc. 1 ¶ 39-40.

        PIP II written notice of its intention to sell the Interest (the "ROFO Notice").

2.    For a period of thirty (30) days from PIP II's receipt of the ROFO Notice (the "Offer Period") BB&T shall not enter into a binding agreement with any third party for the purchase of the Interest.

3.    During the Offer Period, the parties shall negotiate in good faith to agree upon mutually acceptable terms for an agreement of sale for PIP II to purchase the Interest.[4]

Without giving any notice to PIP II, Truist, as BB&T's successor in ownership, subsequently sold 2541 E. College Avenue to a third party.[5] At no point did Truist and PIP II negotiate with respect to the sale of 2541 E. College Avenue, even though PIP II was "willing and able" to purchase the property.[6]

### B.    Procedural History

In its Complaint, PIP II alleges Truist breached the ROFO Agreement when it failed to give PIP II notice and wait thirty days before selling 2541 E. College Avenue.[7] Truist now moves to dismiss PIP II's Complaint under Federal Rule of Civil Procedure 12(b)(6). Its motion has been fully briefed and is now ripe for disposition.

---

[4]   *Id.* ¶ 40; ROFO Agreement, Doc. 10-1 ¶¶ 1-3.
[5]   Compl., Doc. 1. ¶ 50.
[6]   *See* Compl., Doc. 1 ¶¶ 53-55.
[7]   Compl., Doc. 1 ¶¶ 63-78.

## II.  DISCUSSION

### A.  Standard for Rule 12(b)(6) Motions

Under Rule 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[8] and *Ashcroft v. Iqbal*,[9] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10]

The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[11]

### B.  Application

The parties disagree as to whether the ROFO Agreement forms a legally enforceable agreement. Truist argues that the ROFO Agreement is a right of first offer, as it is named. Therefore, in Truist's eyes, the ROFO Agreement is nothing

---

[8]   550 U.S. 544 (2007).
[9]   556 U.S. 662 (2009).
[10]  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[11]  *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

more than an unenforceable agreement to negotiate in the future. As such, Truist argues that the ROFO Agreement is void under *Gleason v. Northwest Mortgage, Inc.*, in which the Third Circuit suggested that a contractual provision that gives a party the right to make the first offer on a property would be void for vagueness.[12] The language at issue in *Gleason* read, as follows:

> *Right of First Refusal to Repurchase.*
>
> [Norwest] agrees that if it decides to sell USR at any time during the first five years after the Closing Date, it will first offer USR to [Mr. Gleason]. [Mr. Gleason] shall have 30 days to accept the offer, and if not accepted within the 30 days, [Norwest] shall be free to sell USR to anyone else on terms substantially similar to those offered to [Mr. Gleason].[13]

Critical to the Court of Appeals' observation about rights of first offers was the fact that the provision at issue contained no terms of the sale, no price, and no method for determining a price.[14] But the *Gleason* court interpreted the above language to be a right of refusal rather than a right to make the first offer.[15]

Truist relies on the *Gleason* court's observation to argue that the ROFO Agreement is exactly what the title states it is, an unenforceable right to make the first offer on 2541 E. College Avenue. It also points out that the ROFO Agreement contains no purchase price or mechanism for determining a price.

---

[12] 243 F.3d 130, 139 (3d Cir. 2001), *abrogated by Ray Haluch Gravel Co. v. C. Pension Fund of Intern. Union of Operating Engineers and Participating Employers*, 571 U.S. 177 (2014).
[13] *Id.* at 139 (alterations in original).
[14] *Id.*
[15] *Id.*

PIP II reads the relevant language in the ROFO Agreement differently. It contends that the ROFO Agreement contains a promise by Truist to negotiate in good faith with PIP II regarding the sale of 2541 E. College Avenue.[16] To allege breach of the ROFO Agreement, PIP II relies on Truist's failures to give notice of its intention to sell and to wait thirty days before binding itself to sell the property. Therefore, PIP II contends that *Gleason* has no bearing on this case, because the ROFO Agreement offers sufficiently definitive terms to form a contract.[17] It instead cites to *Channel Home Centers, Division of Grace Retail Corp. v. Grossman*, where the Court of Appeals held that a promise to negotiate in good faith is a binding, legally enforceable right.[18] There, the language read:

> [T]o induce the Tenant to proceed with the leasing of the Store, [the Store's owner] will withdraw the Store from the rental market, and only negotiate the above described leasing transaction to completion.[19]

The *Channel Home* court found the owner's promise to withdraw the store from the rental market to be both unequivocal and binding on the owner.[20]

As my colleague, the Honorable Yvette Kane, thoughtfully explained for this Court in *Clark Resources, Inc. v. Verizon Business Network Services, Inc.*, the law on promises to negotiate in good faith is not the model of clarity.[21] However, any

---

[16] PIP II Opp. Br., Doc. 14 at 8.
[17] *Id.* at 11
[18] 795 F.2d 291, 298-99 (3d Cir. 1986).
[19] *Id.* at 293.
[20] *Id.* at 299.
[21] 2011 WL 1627074, at *4, *4 n.3 (M.D. Pa. Apr. 29, 2011) (Kane, J.) (citing 1 E. Allan Farnsworth, FARNSWORTH ON CONTRACTS § 3.26b (3d ed. 2004)) (explaining that "refusal to negotiate

such promise requires some clear framework or objective criteria to assess a party's performance under the promise.[22] The terms of a proposed transaction may provide said terms, as was the case in *Channel Home*. In such a case, a refusal to negotiate may be a breach of a promise to negotiate in good faith.[23]

In the ROFO Agreement, Truist explicitly promises to "negotiate in good faith" with PIP II for a duration of thirty days.[24] That promise was not accompanied by any terms of a proposed transaction. Nor did it bind Truist to negotiate exclusively with PIP II as the promise in *Channel Home* did of the store owner.[25]

Nevertheless, the Court finds the ROFO Agreement sufficiently definite to create an enforceable agreement between Truist and PIP II. Truist agreed that whenever it intended to sell 2541 E. College Avenue, it would first notify PIP II, then wait for thirty days before binding itself to sell the property to another buyer.[26] Those terms are analogous to the terms approved in *Channel Home* and accordingly both objective and sufficiently clear. Whether Truist's promise to negotiate in good faith with PIP II requires anything more than giving notice and waiting thirty days before selling is less clear, but resolution of that question is unnecessary to resolve the instant Motion to Dismiss.

---

[22] *Id.* at *4, *4 n.4.
[23] *Id.* at *4 n.4 (citing Farnsworth, *supra*, § 3.26c)
[24] ROFO Agreement, Doc. 10-1 at ¶¶ 2-3.
[25] The ROFO Agreement prohibits Truist from "enter[ing] into a binding agreement with any third party for the purchase of [2541 E. College Avenue]," but it does not prohibit Truist from negotiating with any third party. *Id.* ¶ 3.
[26] *Id.* ¶¶ 2-3.

Truist counters that it did not act in bad faith because the ROFO Agreement was not recorded. But whether Truist acted in good faith or bad, it promised to give PIP II notice and time. It did neither. That is sufficient to allege breach of contract.[27]

## III.  CONCLUSION

For the foregoing reasons, Truist's Motion to Dismiss is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[27] *See Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (explaining the elements of breach of contract under Pennsylvania law as "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages") (citing *J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. 2002)). Truist's arguments about the lack of a price for the property or a mechanism for determining the price are irrelevant to the enforceability of the ROFO Agreement. It was an agreement to purchase Truist's time, not its property. Similarly, its reliance on the title of the ROFO Agreement has little merit when the terms of the contract evidence Truist's obligations under the Agreement.