IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA INVESTMENT PROPERTIES, II LP, | No. 4:22-CV-00555 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| TRUIST BANK IN ITS OWN RIGHT AND AS SUCCESSOR TO BRANCH BANKING AND TRUST COMPANY (BB&T), | |
| Defendant. | |

MEMORANDUM OPINION

DECEMBER 31, 2025

## I. BACKGROUND

On November 6, 2025, the parties submitted a joint stipulation of undisputed facts.[1] In an Order that immediately followed, the Court canceled the scheduled bench trial and made clear that it would grant summary judgment for one party or the other based on the joint stipulation and subsequent briefing.[2] That briefing has now been filed and reviewed by the Court.[3]

---

[1] Doc. 65 (Joint Stipulation of Undisputed Facts).
[2] *See* Doc. 66. That Order served as notice that summary judgment would be granted *sua sponte* following the subsequent briefing. That notice and the opportunity to bring forward opposition are the two requirements that need to be met prior to entry of *sua sponte* summary judgment. *DL Res., Inc. v. FirstEnergy Sols. Corp.*, 506 F.3d 209, 223 (3d Cir. 2007); *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).
[3] *See* Docs. 69, 70, 73.

For the reasons stated below, the Court will grant summary judgment to Truist Bank on the issue of liability.

## II.   DISCUSSION

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[5] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[6] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[7]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[8] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving

---

[4] Fed. R. Civ. P. 56(a).
[5] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).
[6] *Clark v. Mod. Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993).
[7] *Id.*
[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

party."[9] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[10] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[11]

### B. Undisputed Facts

With that standard outlining the Court's framework for review, I now turn to the undisputed facts as laid out in the joint stipulation.

#### 1. The Parties

Pennsylvania Investment Properties, II LP ("PIP II") is a Pennsylvania limited partnership that develops real estate.[12] PIP II's general partners are Clapps Management Inc. and P.A.C. Management Inc. and its limited partners are Albert A. Clapps and Paul A. Clapps.[13] A merger involving Branch Banking and Trust Company ("BB&T") led to the creation of Truist Bank in 2019.[14] Consequently, Truist Bank is the successor in interest to BB&T for the purposes of the present matter.[15]

---

[9] *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).
[10] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).
[11] Fed. R. Civ. P. 56(c)(3).
[12] Doc. 65 ¶ 1.
[13] *Id.* ¶ 2.
[14] *Id.* ¶ 3.
[15] *Id.* ¶ 7.

3

### 2. The 2016 Sale

In 2016, BB&T owned a bank branch at 2541 East College Avenue, State College, Pennsylvania, the property in dispute in this case ("the Property").[16] BB&T also owned the adjacent property, 2501 East College Avenue, State College, Pennsylvania ("the Adjacent Property").[17] BB&T sold the Adjacent Property to Plaintiff in 2016, which it developed into a Burger King restaurant.[18]

#### a. The Relevant Provisions of the 2016 Agreement of Sale of the Adjacent Property

The Agreement for Sale of the Adjacent Property contained a provision that discussed a right of first offer ("ROFO") as to the Property.[19] This provision states:

> Seller shall further grant to Buyer a right of first offer on [2541 East College Avenue, State College, Pennsylvania] (the "Right of First Offer"), to be set forth in more detail in an agreement to be negotiated and agreed upon by the parties during the Study Period, and by which Seller shall agree that in the event the Seller decides to list the Adjacent Property for sale, Seller shall deliver written notice to Buyer and for a period of thirty (30) days after such written notice is delivered, Seller shall not enter into a binding agreement with any third party for the purchase of the Adjacent Property, and shall negotiate in good faith with Buyer to agree upon mutually agreeable terms for a purchase contract between Buyer and Seller for the purchase of the Adjacent Property. Such Right of First Offer shall be personal to the Buyer and not assignable, except to a successor entity taking ownership of the Property and majority owned by the general partners of the Buyer as set forth in the signature block of the Contract. If no purchase agreement for the Adjacent Property has been executed between the Buyer and Seller by the end of the thirty (30) day period, then the Right of First Offer shall be deemed terminated and of no further effect. The

---

[16] Id. ¶ 4.
[17] Id. ¶ 5.
[18] Id. ¶¶ 6, 8.
[19] See id. ¶ 9.

agreement shall expressly state that the Right of First Offer is not recurring after the expiration of the one 30-day period.[20]

There is also a survival clause in the agreement which states: "Covenants and agreements contained in this Contract shall be merged in the Special Warranty Deed at Closing and shall not survive the Closing, except that the obligations and/or disclaimers of the parties set forth in Sections 6, 9, 11, 15 and 18 shall survive the Closing indefinitely."[21]

### b. The 2016 Transmittal Letter

On December 28, 2016, BB&T mailed the following documents to PIP II's real estate attorney, Scott Williams, to close on the Adjacent Property: the Limited Warranty Deed; a Settlement Statement; the Owner's Affidavit; a Certificate of Non-Foreign Status; the Agreement for Right of First Offer; and the Temporary Construction Easement Agreement.[22] In the accompanying closing letter, BB&T's legal counsel Leigh Bagley requested Williams to "hold all Closing Documents in trust until you are in a position to (a) consummate closing in accordance with the terms and conditions of the Contract and this letter, and (b) wire transfer the sum payable to BB&T pursuant to the Settlement Statement approved by BB&T (being $499,658.78) to our firm's trust account."[23] Williams was also directed to return by

---

[20] *Id.*
[21] *Id.* ¶ 10.
[22] *Id.* ¶ 11.
[23] *Id.* ¶ 13.

5

email "a copy of the fully executed Settlement Statement and Deed (once recorded)."[24] However, BB&T did not request the return of the countersigned ROFO in the closing letter.[25]

The closing for the Adjacent Property took place on December 29, 2016.[26] No one from BB&T was present during the closing, but the $500,000 consideration stated in the agreement was paid to them.[27]

### 3. The Right of First Offer

The ROFO was signed on behalf of BB&T on December 28, 2019, and on behalf of PIP II on December 29, 2016.[28] The relevant provisions of the ROFO are:

> NOW, THEREFORE, in consideration of One Dollar ($1.00) the receipt and sufficiency of which is hereby acknowledged and intending to be bound hereby and to bind their respective successors and assigns, the parties hereto agree as follows:
>
> If BB&T desires to sell its interest in [the Adjacent Property] (the "Interest") at any time, prior to marketing or accepting any offer to purchase the Interest BB&T shall give PIP II written notice of its intention to sell the Interest (the "ROFO Notice").
>
> For a period of thirty (30) days from PIP II's receipt of the ROFO Notice (the "Offer Period") BB&T shall not enter into a binding agreement with any third party for the purchase of the Interest.

---

[24] *Id.* ¶ 14.
[25] *Id.* ¶ 17.
[26] *Id.* ¶ 15.
[27] *Id.* ¶¶ 15, 16.
[28] *Id.* ¶ 18, Ex. C.

> During the Offer Period, the parties shall negotiate in good faith to agree upon mutually acceptable terms for an agreement for sale for PIP II to purchase the Interest.[29]

### 4. The Return of the ROFO

Albert Clapps, a PIP II partner, did not believe that he forwarded the executed ROFO back to BB&T and he was "not aware of anybody else returning it."[30] PIP II's attorney Williams was "not aware" that that the fully signed document was ever returned to BB&T and said that he probably would have returned the documents they requested.[31] While it was Williams' intention to record the ROFO after it was signed, that recording never occurred because his staff never sent it to the register or recorder.[32] There is no evidence of Truist seeking the return of the signed ROFO or following up on its status.[33]

### 5. Truist Bank Sells the Property

In 2020, Truist Bank publicly listed the Property for sale with an asking price of $1 million.[34] PIP II did not receive written notice from Truist Bank before the Property was listed.[35] They also did not engage in negotiations to sell the Property

---

[29] *Id.* ¶ 24.
[30] *Id.* ¶ 19.
[31] *Id.* ¶¶ 20, 21.
[32] *Id.* ¶ 22.
[33] *Id.* ¶ 23.
[34] *Id.* ¶ 27.
[35] *Id.* ¶ 29.

with Truist before it was marketed or listed.[36] Truist Bank eventually sold the Property for a price of $1 million to Horizon Federal Credit Union in July 2020.[37]

### 6. Truist Has No Record of the Fully Signed ROFO

Truist Bank stores "fully executed" documents in an "Integrated Workplace Management System" ("IWMS").[38] Properties are designated in the IWMS by both the property's address and an asset number.[39] Documents such as a right of first refusal or a ROFO would be stored in this system.[40] Defendant's typical process for maintaining documents in the IWMS is to have the legal team draft the document, and once fully executed, to have the legal department send it to Truist Bank's lease administration.[41]

When listing a property for sale, Defendant's process is to check the IWMS for any relevant agreements, such as a ROFO, right of first offer, or option, first "before the property is marketed" and again before entering a contract for sale of the property.[42] But as Truist has "acquired" some of these properties through "many different mergers," Nate Pesenti, a transaction manager in Truist Bank's corporate real estate department, has "no expectation as to what [he]'ll find" when searching

---

[36] Id. ¶ 30.
[37] Id. ¶ 32.
[38] Id. ¶ 33.
[39] Id. ¶ 34.
[40] Id. ¶ 42.
[41] Id. ¶ 41.
[42] Id. ¶ 36.

the IWMS.[43] That is because these prior banks "have varying degrees of filing consistency," which means there may be no documents in the database for a specific property.[44]

Pesenti confirmed that the ROFO did not appear in the IWMS and that the first time he ever saw the document was when PIP II notified Truist about the potential breach.[45] Pesenti did not know why the ROFO was not present in the IWMS, and he indicated that this absence was not intentional.[46] He also admitted that Defendant did not search the IWMS for records relating to the Adjacent Property when listing the Property.[47]

### C. Analysis

On April 15, 2022, Plaintiff Pennsylvania Investment Properties, II LP filed a one-count Complaint against Defendant Truist Bank for breach of contract.[48] Further, on April 4, 2025, this Court granted summary judgement on the issue of damages and found that PIP II's recovery for its breach of contract claim would be limited to nominal damages.[49]

---

[43] *Id.* ¶ 35.
[44] *Id.*
[45] *Id.* ¶ 45.
[46] *Id.* ¶ 43.
[47] *Id.* at ¶ 38.
[48] Doc. 1 (Compl.).
[49] Doc. 51.

Therefore, the only aspect of this case that has yet to be disposed of is liability. Given that there are no disputes as to the material facts laid out above, that single breach of contract claim will be adjudicated as follows.

### 1. Breach of Contract Claim

As I laid out in my previous summary judgment memorandum opinion, in Pennsylvania, a breach of contract claim "contain[s] three [elements]: '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages."[50] Here, the parties exclusively dispute whether there was ever a contract in existence. Their disagreement can further be distilled down to a question over whether acceptance to the ROFO was provided.

When a contract claim is at issue, "the burden is on the plaintiff to prove ... the existence of the contract to which the defendant is a party."[51] For a contract to come into existence, there must be "mutual assent between the parties."[52] That assent must take the form of an "outward" manifestation of acceptance.[53] After all, a "secret intent to accept" does not operate as an acceptance.[54]

The record before the Court is devoid of any evidence of an outward manifestation of PIP II's acceptance of the ROFO. It is conclusively made out that

---

[50] *Udodi v. Stern*, 438 F. Supp. 3d 293, 299 (E.D. Pa. 2020) (quoting *Ware v. Rodale Press Inc.*, 322 F.3d 218, 225 (3d Cir. 2003)).
[51] *Dille Fam. Tr. v. Nowlan Fam. Tr.*, 276 F. Supp. 3d 412, 438 (E.D. Pa. 2017) (quoting *Viso v. Werner*, 471 Pa. 42, 369 A.2d 1185, 1187 (1977)).
[52] *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008).
[53] *Id.*
[54] *Makoroff v. Dep't of Transp.*, 938 A.2d 470, 472 (Pa. Commw. Ct. 2007).

BB&T signed the ROFO before sending it PIP II. This constituted the offer of the ROFO.[55] While PIP II signed the ROFO and closed on the Adjacent Property, there is no evidence it took any other action with the ROFO to manifest its acceptance to it.[56] The parties agree that a fully signed version was not returned to BB&T and that the ROFO was not reordered.[57]

With the record before the Court, it seems that PIP II had the very type of secret intent that is insufficient to operate as acceptance.[58] Therefore, the Court finds that PIP II has failed to meet its burden of establishing an existing contract; namely they have failed to show that there was the acceptance of the ROFO required to make it an enforceable contract. As such, their breach of contract claim must fail.

---

[55] The contention by PIP II that once the ROFO was signed by BB&T it became self-executing is without merit. Right of first offer contracts are not transfers of property rights, but provide only "personal obligation[s]" and are "exclusively contractual." *Citimortgage, Inc. v. Comini*, 2018 PA Super 92, 184 A.3d 996, 1000 (2018). This means that contract principals and requirements—like that of acceptance—apply to the ROFO.

[56] To support their argument that the ROFO became effective upon its delivery to BB&T, PIP II cites several cases that contain one crucial fact not present here—there was delivery of some instrument or funds to a third party. *See In re Boy Scouts of Am.*, 137 F.4th 126 (3d Cir. 2025); *Pronzato v. Guerrina*, 163 A.2d 297 (Pa. 1960); *Chambley v. Rumbaugh*, 5 A.2d 171 (Pa. 1939); *In re Rynier's Estate*, 32 A.2d 736 (Pa. 1943); *In re Bell's Will*, 54 A.2d 79 (Pa. Super. Ct. 1947). Here, once the ROFO was delivered to PIP it constituted an offer. In order for that offer to be accepted, they needed to take some outward action to manifest their acceptance. In all cases cited by PIP II, that action was delivery of an instrument or depositing of the funds with a third party. The record is devoid of any evidence that a similar action, or any action was taken by PIP II. Therefore, the Court finds that no acceptance was provided and, as a result, no enforceable contract regarding the ROFO ever came into being.

[57] The absence of either fact is not determinative of finding that there was not acceptance here. Rather, either would likely have been sufficient to evidence acceptance. The absence of both – and any other evidence of acceptance – supports the Court's finding that there was not acceptance here.

[58] *See Makoroff v. Dep't of Transp.*, 938 A.2d 470, 472 (Pa. Commw. Ct. 2007).

## III. CONCLUSION

For the foregoing reasons summary judgment on the issue of liability will be granted to Truist Bank.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge
